**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

                                                Case No. 02-75158

TIMOTHY W. IZZO,                     Hon. Gerald E. Rosen

       Debtor.

_____/

TIMOTHY W. IZZO,

       Plaintiff/Appellee,               Bankr. Case No. 01-45917-R
                                      Chapter 7

v.                                        Adv. Proc. No. 01-4668
                                        Hon. Steven W. Rhodes

UNITED STATES OF AMERICA,

       Defendant/Appellant.

_____/

**OPINION AND ORDER REVERSING BANKRUPTCY**
**COURT'S AWARD OF SUMMARY JUDGMENT TO DEBTOR**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on_____March 30, 2006_____

PRESENT:  Honorable Gerald E. Rosen
                     United States District Judge

       In the present appeal, the Defendant/Appellant United States of America

challenges a ruling by the Bankruptcy Court that the tax liabilities of Plaintiff/Appellee

Timothy W. Izzo for the tax years 1988-1994 are not excepted from discharge under 11

U.S.C. § 523(a)(1)(B).  In so ruling, the Bankruptcy Court distinguished the Sixth

Circuit's ruling in United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029 (6th

Cir. 1999), which the parties agree is the controlling precedent here. The Government

reads Hindenlang as establishing a bright-line rule, and argues that the Bankruptcy Court

erred in construing the Sixth Circuit's decision as recognizing an exception to this rule

under circumstances such as those presented in this case.

Having reviewed the parties' submissions and the record as a whole, the Court

now is prepared to decide this appeal. For the reasons set forth below, the Court agrees

with the Government that this case is not distinguishable from Hindenlang, and that the

Bankruptcy Court's determination to the contrary must be reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The operative facts of this case are set forth in the Bankruptcy Court's decision,

and need not be restated at length here. Debtor Timothy W. Izzo commenced a Chapter 7

bankruptcy proceeding in March of 2001. In July of that year, he filed a complaint

seeking a declaration that his federal tax liabilities for the tax years 1988-1997 were

dischargeable.[1]

All are agreed that Debtor did not timely file tax returns for the tax years at issue

here, 1988 through 1994. Because he did not, the federal Internal Revenue Service

("IRS") invoked its "substitute for return" ("SFR") procedure, see 26 U.S.C. § 6020(b),

and processed the resulting SFRs for the pertinent 1988-1994 tax years on September 25,

---

[1]The Government does not dispute the dischargeability of Debtor's tax liabilities for the tax years 1995 and 1996. While the parties do dispute the dischargeability of Debtor's tax liability for the 1997 tax year, this matter is not at issue in the present appeal.

1995. At the same time, the IRS sent Debtor a so-called "30-day letter," requesting that he either consent to the tax liabilities calculated in the SFRs or explain why these liabilities should be different.

When Debtor failed to respond, the IRS sent him a statutory "notice of deficiency" by certified mail, see 26 U.S.C. § 6212, and informed him of his right to file a petition with the U.S. Tax Court within 90 days to challenge the IRS's deficiency determination, see 26 U.S.C. § 6213(a).[2] Again, this 90-day period lapsed without Debtor commencing any sort of challenge to the agency's determination. Accordingly, on April 7, 1997, the IRS assessed deficiencies against Debtor for the tax years 1988-1994, totaling $632,617.83 in taxes, interest, and penalties.[3]

In the summer of 1998, Debtor apparently entered into discussions with the IRS to determine if the agency would accept a lesser amount in satisfaction of Debtor's tax liabilities. During this process, Debtor was asked by an IRS revenue agent to prepare and submit Form 1040 tax returns for the years at issue. Debtor submitted these returns on October 13, 1998, reflecting liabilities that were substantially less than the amounts calculated in the SFRs prepared by the IRS. Following these submissions, the IRS agreed to abate the portion of the prior assessments that exceeded the amounts shown on Debtor's Forms 1040, leaving a reduced liability of $155,871.61 for the tax years 1988-

_____

[2]This mailing is sometimes referred to as a "90-day letter." See, e.g., In re Hindenlang, 164 F.3d at 1031 (using this nomenclature).

[3]The Government does not dispute that the penalties are dischargeable.

3

1994.

In his complaint in the Chapter 7 bankruptcy proceeding, Debtor sought a declaration that this outstanding tax liability was dischargeable. The Government opposed this requested relief, arguing that Debtor's tax liabilities for the tax years 1988-1994 were excepted from discharge under 11 U.S.C. § 523(a)(1)(B) in light of Debtor's untimely filing of tax returns for these years. On cross-motions for summary judgment, the Bankruptcy Court held that Debtor's tax liabilities were eligible for discharge. The Government now appeals.

## II. ANALYSIS

### A.    The Law Governing This Appeal

In general, a debtor who files a Chapter 7 bankruptcy petition is discharged from liability for all debts incurred prior to the filing of the petition, subject to the exceptions set forth at section 523 of the Bankruptcy Code. See 11 U.S.C. § 727(b). One such exception, at issue here, encompasses "any debt . . . for a tax . . . with respect to which a return, if required, . . . was not filed." 11 U.S.C. § 523(a)(1)(B)(i). The dispositive question in this case is whether Debtor filed "returns" within the meaning of this provision for the tax years 1988-1994. This is a question of law that this Court reviews de novo. In re Hindenlang, 164 F.3d at 1032.

All are agreed that Debtor eventually filed a Form 1040 for each of the tax years at issue. By the time he did so, however, the IRS already had completed SFRs and had

4

assessed deficiencies against Debtor encompassing this entire seven-year period.  The question, then, is whether Debtor's untimely submissions after the IRS had taken these actions nonetheless qualified as "returns" under § 523(a)(1)(B)(i).  This, in turn, requires that the Court address the "threshold question of what constitutes a return" under this Bankruptcy Code provision.  In re Hindenlang, 164 F.3d at 1032.

The Sixth Circuit addressed precisely this issue in In re Hindenlang, a decision which, of course, is binding upon this Court.  Specifically, the Court held that a document must satisfy four criteria in order to qualify as a return: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law."  In re Hindenlang, 164 F.3d at 1033 (internal quotation marks and citation omitted).[4]  In that case, as here, the debtor's submissions satisfied the first three prongs of the test, leaving only the question whether these submissions "represent[ed] an honest and reasonable attempt to satisfy the requirements of the tax law."  Accordingly, the Court turns to this issue, guided by the Sixth Circuit's resolution of precisely the same question in In re Hindenlang.

---

[4]The Court termed this "the *Beard* test," as it derived from a Tax Court ruling that the Sixth Circuit subsequently affirmed.  See Beard v. Commissioner, 82 T.C. 766 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986).  This Court likewise adopts this terminology for the balance of this opinion.

**B.      Debtor's Late-Filed Tax Forms Do Not Qualify as "Returns" Under §
523(a)(1)(B).**

In this case, Debtor filed Forms 1040 for the tax years 1988-1994 only after the

IRS had prepared SFRs for these years and had made assessments against Debtor based

on the agency's calculation of his tax liabilities.  The same was true in <u>In re Hindenlang</u>,

and the Sixth Circuit held that the debtor's submissions in that case did not qualify as

"honest and reasonable attempt[s] to satisfy the requirements of the tax law."  <u>In re</u>

<u>Hindenlang</u>, 164 F.3d at 1035.  Nonetheless, Debtor here argues, and the Bankruptcy

Court agreed, that other considerations serve to distinguish this case from <u>In re</u>

<u>Hindenlang</u>.  The Court finds, however, that the facts of the two cases do not differ in any

legally significant respect.

**1.      The Sixth Circuit's Ruling in <u>In re Hindenlang</u>**

The Court's analysis necessarily begins with the facts presented and result reached

in <u>In re Hindenlang</u>.  In that case, as here, debtor William Hindenlang did not file Forms

1040 for the tax years 1985 through 1988 until well after the IRS had prepared SFRs and

assessed the deficiencies against him for these tax years.  Using the proper forms,

Hindenlang "calculated the taxes substantially the same as in the SFRs previously

prepared by the IRS."  <u>In re Hindenlang</u>, 164 F.3d at 1031.

In evaluating the legal significance of these late filings, the Sixth Circuit first

addressed the district court's holding that once a taxpayer submits "facially valid" tax

forms, the Government must produce "particularized evidence" that the taxpayer did not

6

file these forms "in an honest and good faith attempt to comply with the tax law." 164

F.3d at 1034.  The Court rejected this reasoning:

> We disagree with the district court's conclusion that the burden of
> showing dishonesty under the fourth prong of the *Beard* test shifts to the
> government if the debtor files a facially valid IRS Form 1040 after IRS
> assessment.  Although we agree that the burden of proving by a
> preponderance of the evidence an exception to discharge lies with the
> creditor, and that exceptions to discharge are to be strictly construed in
> favor of the debtor, we hold that the government has met its burden in this
> case.  We hold as a matter of law that a Form 1040 is not a return if it no
> longer serves any tax purpose or has any effect under the Internal Revenue
> Code.  A purported return filed too late to have any effect at all under the
> Internal Revenue Code cannot constitute "an honest and reasonable attempt
> to satisfy the requirements of the tax law."  Once the government shows
> that a Form 1040 submitted after an assessment can serve no purpose under
> the tax law, the government has met its burden.
>
> The district court concluded that the government must bring forth
> particularized evidence to show that the taxpayer did not file the Form 1040
> in an honest and good faith attempt to comply with the tax law, even after
> an assessment has been made.  We conclude, however, that when the debtor
> has failed to respond to both the thirty-day and the ninety-day deficiency
> letters sent by the IRS, and the government has assessed the deficiency,
> then the Forms 1040 serve no tax purpose, and the government thereby has
> met its burden of showing that the debtor's actions were not an honest and
> reasonable effort to satisfy the tax law.

164 F.3d at 1034-35 (internal quotation marks, citations, and footnotes omitted).

The Court then explained why Hindenlang's untimely filings served no "tax

purpose" and otherwise had no effect under the Internal Revenue Code:

> Although filing a return commences a three-year statute of limitations on
> the Secretary's authority to enter an assessment, a document purporting to
> be a return but filed after the assessment has already been made is too late
> to have any effect on this limitation.  Furthermore, the Internal Revenue
> Code's ten-year limitation on the IRS's right to collect on the assessment

7

through levy or judicial proceeding begins at the moment the assessment is made, regardless of whether a return was filed.

Hindenlang's purported return also would have failed to mitigate or absolve him from civil or criminal liability had the IRS sought to impose such liability. Willful failure to file a timely return is a misdemeanor . . . . Late filing of a return or a document purporting to be a return does not remove this criminal liability. Failure to file a return without reasonable cause also subjects a delinquent taxpayer to a five-percent penalty per month up to a maximum of twenty-five percent of the taxes owed. Hindenlang filed his Forms 1040 with the IRS well past any time that would bring him under the twenty-five-percent maximum.

164 F.3d at 1035 (citations omitted). The Court further noted the concerns that would be

raised if Hindenlang's late filings were regarded as "returns" under § 523(a)(1)(B):

Under Hindenlang's theory, a person filing a Form 1040 after assessment would be better off in bankruptcy than someone who did not, even though the Form 1040 serves no tax purpose. Nothing in § 523(a)(1) of the Bankruptcy Code suggests that a document that does not qualify as a return under the Internal Revenue Code should nonetheless qualify as a return for purposes of bankruptcy discharge. Such a result would create an unjustifiable inconsistency in the law. We conclude that 11 U.S.C. § 523(a)(1), which refers to tax returns that are required by the Internal Revenue Code to be filed, sought to encompass only those documents that would qualify as returns under the Internal Revenue Code.

164 F.3d at 1035.

Finally, the Sixth Circuit restated its holding, and reversed the rulings of the courts

below that Hindenlang's tax liabilities were eligible for discharge:

We conclude that if a document purporting to be a tax return serves no purpose at all under the Internal Revenue Code, such a document cannot, as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of the tax law. Therefore, the document is not a "return" for purposes of 11 U.S.C. § 523(a)(1)(B).

8

164 F.3d at 1035 (footnote omitted).

>    **2.      The Application of <u>In re Hindenlang</u> to This Case**

All of the above-quoted passages from <u>In re Hindenlang</u> apply with equal force here.  Debtor's tax forms here, as in that case, were filed only ***after*** the IRS had prepared SFRs and made assessments for the entire seven-year period at issue.  Thus, Debtor's untimely filings here, like those in that case, could not have served any of the potential "tax purposes" canvassed by the Sixth Circuit — they could not have affected the IRS's authority to make or collect on an assessment, nor could they have mitigated any criminal liability or monetary penalties.  At first blush, then, <u>In re Hindenlang</u> seemingly dictates that Debtor's tax liabilities are excepted from discharge under § 523(a)(1)(B).

The Court's analysis is complicated, however, by the multiple and slightly varying formulations used by the Sixth Circuit to state its holding in that case, and by two footnotes in which the Sixth Circuit acknowledged, but declined to address, certain "hypothetical" circumstances that might warrant a different result.  As to the former, it is evident that <u>In re Hindenlang</u> equates the "honest and reasonable attempt" prong of the <u>Beard</u> test to the inquiry whether a taxpayer's filing has a "tax purpose" or otherwise "has an[] effect under the Internal Revenue Code."  164 F.3d at 1034.  It is equally evident, as observed above, that Debtor's filings in this case did not serve any of the specific "tax purposes" surveyed by the Sixth Circuit in <u>In re Hindenlang</u>.

Yet, it is less certain whether <u>In re Hindenlang</u> allows for the possibility that a tax

form filed after the IRS has made an assessment can *ever* have a "tax purpose" that would satisfy the "honest and reasonable attempt" element of the <u>Beard</u> test.  In one passage — which, not surprisingly, the Government cites repeatedly in its submissions to this Court — the Sixth Circuit explained that "when the debtor has failed to respond to both the thirty-day and the ninety-day deficiency letters sent by the IRS, and the government has assessed the deficiency, then the Forms 1040 serve no tax purpose, and the government thereby has met its burden of showing that the debtor's actions were not an honest and reasonable effort to satisfy the tax law."  <u>In re Hindenlang</u>, 164 F.3d at 1034-35 (footnote omitted).  If this were all that the Sixth Circuit said on the subject, this Court would readily conclude that Debtor's submissions in this case served no "tax purpose," and thus did not represent an "honest and reasonable attempt" to comply with the tax law.

Other passages in the Sixth Circuit's decision, however, seem to suggest that a filing after an IRS assessment is merely ***presumed*** to serve no "tax purpose," and that this presumption may be overcome in the proper circumstances.  At one point, for example, the Sixth Circuit stated that the Government could "me[e]t its burden" under § 523(a)(1)(B) by "show[ing] that a Form 1040 submitted after an assessment can serve no purpose under the tax law."  164 F.3d at 1034.  This suggests the possibility that the Government might not automatically meet its burden merely by establishing the fact that the debtor submitted a Form 1040 after an assessment, and that some additional showing of "no purpose" might be required, at least in some cases.  The Sixth Circuit also noted

10

that the debtor in that case "ha[d] not indicated any tax purpose under the Internal Revenue Code for filing his Forms 1040," 164 F.3d at 1035, thereby suggesting, at least by negative implication, that a debtor in another case *might* be able to make such a showing, even as to a tax form filed after the IRS has made an assessment.

Two footnotes in In re Hindenlang add to this uncertainty.  In the first, the Court noted the Government's suggestion that "a Form 1040 filed after assessment by the IRS could serve a tax purpose" if this filing "resulted in a higher tax obligation than the assessment," and thereby reflected the taxpayer's "good faith attempt to comply with the tax law to the extent of the additionally calculated tax."  164 F.3d at 1034 n.5.  In the second, the Court emphasized that a debtor would not "automatically satisfy the fourth prong of the *Beard* test" by "show[ing] a tax purpose for filing a Form 1040 after the IRS has made an assessment."  164 F.3d at 1035 n.7.  Rather, in such a case, "the government could still produce particularized evidence showing that such a late filing of a Form 1040 was neither an honest nor reasonable attempt to comply with the tax law."  164 F.3d at 1035 n.7.  In both of these footnotes, then, the Sixth Circuit acknowledged the theoretical possibility, at least, that a Form 1040 filed after an assessment could serve a tax purpose.

Whatever the limits to the general rule stated in In re Hindenlang, and whatever the evidence that might establish an exception to this rule, this Court is confident that no such evidence has been presented in this case.  In distinguishing In re Hindenlang and holding that Debtor's tax liabilities were dischargeable, the Bankruptcy Court relied

solely upon the facts (i) that the IRS agreed to accept Debtor's untimely Form 1040

filings, and (ii) that the agency then used these submissions as a basis for reducing

Debtor's overall tax liability for the 1988-1994 period from $632,617.83 to $155,871.61.

In the Bankruptcy Court's view, such a substantial reduction in liability clearly achieved

a "tax purpose," and further "established that the IRS itself considered the returns to be

an honest and reasonable attempt by the debtor to comply with the tax laws."  (Bankr.

Court Op. at 6-7.)  Thus, the lone distinguishing feature of this case, as identified by

Debtor and accepted by the Bankruptcy Court, is that Debtor's submissions achieved a

reduction in his tax liability, while the tax forms submitted in In re Hindenlang merely

confirmed the same tax liability reflected in the SFRs prepared by the IRS.

　　　　This Court agrees with the Fourth and Seventh Circuits that this provides an

insufficient basis for deviating from the general rule, as announced in In re Hindenlang,

that post-assessment tax returns do not represent an "honest and reasonable attempt" to

comply with the tax laws.  In Moroney v. United States (In re Moroney), 352 F.3d 902,

903-04 (4th Cir. 2003), as here, debtor Michael J. Moroney submitted tax forms to the

IRS only after the agency prepared SFRs for the relevant tax years and made assessments

against him based on its own calculation of his tax liability.  The IRS then agreed, just as

it did in this case, to abate a portion of the assessments, to the extent that Moroney's tax

forms reflected tax liabilities that were less than the amounts shown on the SFRs.

Despite this agency action, the Fourth Circuit held that Moroney's late filings did not

12

qualify as "returns" under § 523(a)(1)(B), and that his tax liabilities therefore were
excepted from discharge.  In re Moroney, 352 F.3d at 907.

In so ruling, the Court first stated its agreement with the Sixth Circuit and other
courts that "forms filed after an involuntary assessment do not serve the purposes of the
tax system, and thus rarely, if ever, qualify as honest and reasonable attempts to comply
with the tax laws."  352 F.3d at 905 (citing In re Hindenlang and other cases).  The Court
explained:

> We agree with the weight of authority that a debtor's delinquency is
> relevant to determining whether the debtor has filed a return.  The very
> essence of our system of taxation lies in the self-reporting and self-
> assessment of one's tax liabilities.  Timely filed federal income tax returns
> are the mainstay of that system.  A reporting form filed after the IRS has
> completed the burdensome process of assessment without any assistance
> from the taxpayer does not serve the basic purpose of tax returns:  to self-
> report to the IRS sufficient information that the returns may be readily
> processed and verified.  Simply put, to belatedly accept responsibility for
> one's tax liabilities, only when the IRS has left one with no other choice, is
> hardly how honest and reasonable taxpayers attempt to comply with the tax
> code.

In re Moroney, 352 F.3d at 906 (citations omitted).

The Fourth Circuit then turned to the precise issue before this Court — namely,
whether a debtor's untimely tax forms serve a tax purpose in cases where the IRS accepts
these filings and agrees to a corresponding reduction in the debtor's tax liability.  The
Fourth Circuit emphatically rejected this contention:

> . . . Moroney argues that his late-filed statements, despite their
> extreme delinquency, functioned no differently from timely filed tax
> returns.  His statements, like timely filed returns, self-reported his tax

13

liabilities.  And although the IRS had prepared SFRs before Moroney filed, Moroney contends that his statements still were not purposelessly duplicative.  Rather, because his statements showed lesser liabilities than the IRS had estimated, the IRS abated portions of its prior assessments.  In Moroney's view, his statements must be considered honest and reasonable attempts to comply with the tax laws — after all, the IRS credited them enough to reduce his assessments.

Moroney's argument, however, misses the point.  The relevant inquiry is whether Moroney made an honest and reasonable effort to comply with the tax laws, and not whether Moroney's eventual effort had some effect on his tax liability.  Under Moroney's approach, the availability of discharge would turn on the IRS's accuracy in assessing taxes, rather than on Moroney's sincerity and diligence in complying with the tax code.  In effect, Moroney failed to provide the IRS with the very information it needed to accurately assess his taxes, and now he seeks to benefit from the IRS's resulting imprecision (which was hardly surprising, given Moroney's lack of assistance).  Moroney's approach would only discourage the IRS from abating debtors' tax liabilities — especially when any adjustment, no matter how small, would lead to a discharge of the entire tax liability, no matter how large.

352 F.3d at 906; see also United States v. Hatton (In re Hatton), 220 F.3d 1057, 1061

(9th Cir. 2000) (holding that a debtor's "belated acceptance of responsibility" by entering

into a post-assessment settlement with the IRS and agreeing to make installment

payments on his acknowledged tax liability did not "constitute an honest and reasonable

attempt to comply with the requirements of the tax law," where the debtor had "made

every attempt to avoid paying his taxes until the IRS left him with no other choice").

The Seventh Circuit recently reached the same conclusion under similar facts.  In

In re Payne, 431 F.3d 1055, 1056 (7th Cir. 2005), debtor John Howard Payne waited

until 1992 to file his tax return for the 1986 tax year, by which time the IRS had already

14

made an assessment against him and commenced efforts to collect the balance.  Shortly

after his untimely filing, Payne sought to reach a compromise with the IRS regarding his

tax liability, but the IRS rejected his offer.[5]  The Court held that Payne's submission

could not be deemed a "return" under the four-pronged <u>Beard</u> test:

> All but the fourth condition is satisfied by Payne's belated return.
> That condition — that the purported return evidence an "honest and
> reasonable" endeavor to comply with the law — is not satisfied, and not
> only or even mainly because Payne offers no excuse for having failed to
> file his 1986 return until six years after it was due . . . .  More important, the
> belated "return" was not a reasonable endeavor to satisfy Payne's tax
> obligations.  It may have been intended to induce the IRS to talk
> compromise with him . . . .  The belated filing may also or instead have
> been intended to set the stage for Payne's attempt to discharge his tax debt
> in bankruptcy.  That is speculation; what is certain is that the belated filing
> was not a reasonable effort to satisfy the requirements of the tax law,
> namely, the requirements of filing a timely return and paying the amount of
> tax calculated on the return.  When Payne filed, the IRS had already
> calculated the tax due from him, which means that he had succeeded in
> defeating the main purpose of the requirement that taxpayers file income-
> tax returns:  to spare the tax authorities the burden of trying to reconstruct a
> taxpayer's income and income-tax liability without any help from him.  A
> return filed after the authorities have borne that burden does not serve the
> purpose of the filing requirement.

* * * *

> Payne hints that his return, belated as it was, did furnish the IRS
> with some helpful information, for he says that "the Government points to
> no information sought from [him] that was not provided by him."  But he
> does not specify any useful information that he was asked to and did
> provide.  It is true that after he filed his return, which showed taxable
> income on which he had failed to pay the full tax owing, he could no longer

---

[5]Although <u>In re Payne</u> differs from this case in this respect, it is evident from the Seventh
Circuit's ruling that the outcome in that case would have been no different if the IRS had
accepted Payne's offer of compromise and agreed to reduce his tax liability.

15

argue that he owed nothing.  But this concession was academic, since, as
far as appears, his purpose in filing the belated return was to satisfy a
condition precedent to obtaining a discharge rather than to pay any of the
taxes that he owed . . . .  And neither Payne's purpose nor whether his
return had any value to the IRS is critical.  The legal test is not whether the
filing of a purported return has some utility for the tax authorities, but
whether it is a *reasonable* endeavor to satisfy the taxpayer's obligations, as
it might be if the taxpayer had tried to file a timely return but had failed to
do so because of an error by the Postal Service.  There was nothing like that
here.

In re Payne, 431 F.3d at 1057-58.

This Court concurs in this weight of authority, and finds that Debtor's late-filed

tax forms did not evidence an "honest and reasonable attempt to satisfy the requirements

of the tax law."  Debtor has offered no excuse for his untimely filings, whether in his

brief on appeal or in the course of the Bankruptcy Court proceedings.  Rather, he asserts

that his submissions qualify as "returns" solely by virtue of the IRS's decision to accept

them and to use them as the basis for reducing his outstanding tax liability.  As the Fourth

Circuit recognized in In re Moroney, this turns the "honest and reasonable attempt"

inquiry on its head, allowing the reasonableness of a taxpayer's conduct to depend upon

(i) the IRS's willingness to accept and consider information provided by a taxpayer after

an assessment has already been made, and (ii) the agency's ability to accurately calculate

an individual's tax liability without assistance from the taxpayer himself.

Viewed in this light, the Court cannot accept Debtor's proposed distinction

between this case and In re Hindenlang.  The only material difference between the two

cases, after all, is that the information ultimately provided by the debtor in In re

16

Hindenlang was redundant of the IRS's own calculations, while the information eventually provided by Debtor here reflected tax liabilities that were lower than the IRS had previously computed through its SFRs. To say that the latter qualifies as an "honest and reasonable attempt" to satisfy the tax laws while the former does not would render the fourth prong of the Beard test devoid of all meaning or purpose.

Notably, the third prong of this test already requires that the taxpayer's submission "must contain sufficient data to allow calculation of tax." In re Hindenlang, 164 F.3d at 1033 (internal quotation marks and citation omitted). Surely, then, the fourth prong must of necessity contemplate some *further* evidence of the taxpayer's reasonable effort to comply with the tax law, beyond the bare fact that he supplied information from which the IRS was able to more accurately compute his tax liability. This additional element cannot be satisfied, in this Court's view, merely by showing that the IRS was able, despite a lengthy delay, to make some use of the information eventually provided by the taxpayer, or that the taxpayer, despite his lack of diligence (or worse), was able to persuade the agency to consider this information as a basis for reducing his tax liability. Such evidence does not tend in any way to show that the taxpayer's delayed submission represented *his* honest and reasonable attempt to meet his obligations under the tax law — as opposed to, say, a self-interested effort to reduce an outstanding tax liability. Because the record in this case sheds no light on such questions of Debtor's motivation and intent, there is no basis for concluding that Debtor has overcome the heavy

17

presumption that his post-assessment submissions served no "tax purpose."

Nor does the Court discern any significance in the fact that Debtor apparently filed his untimely tax forms at the behest of an IRS revenue agent.[6]  To be sure, this request suggests the likelihood that the IRS had some use for Debtor's submissions, because the agency otherwise would not have asked for them.  But, again, the usefulness of the information has no bearing upon the pertinent question — namely, whether Debtor had embarked upon an honest and reasonable effort to meet his obligations under the tax law. On this point, the IRS's bare request, without more, lends equal support to the opposing propositions (i) that Debtor filed his 1988-1994 tax returns simply to surmount a procedural obstacle to a possible agreement by the IRS to abate a portion of the outstanding assessments against him, or (ii) that these returns were filed in furtherance of a good faith, if belated, effort to comply with the tax laws.  Such idle speculation as to Debtor's motives does not overcome the presumption that his untimely post-assessment submissions lacked any "tax purpose."

This Court recognizes the repeated acknowledgments in the case law — in the above-cited Fourth and Seventh Circuit rulings, for example, see In re Payne, 431 F.3d at

_____

[6]As noted in the Seventh Circuit's decision in In re Payne, 431 F.3d at 1057-58, the IRS has enacted a regulation that requires the filing of a tax return, or its equivalent, before the agency will consider an offer to compromise an outstanding tax liability.  See 26 C.F.R. § 301.7122-1(d).  Although this regulation had not yet taken effect at the time that the IRS agreed to abate a portion of its assessments against Debtor, it appears likely that the IRS revenue agent who dealt with Debtor was applying an informal agency policy akin to this regulation when he asked Debtor to file returns for the tax years at issue.

1059-60; <u>In re Moroney</u>, 352 F.3d at 907, and somewhat more obliquely in the Sixth Circuit's decision, <u>see</u> <u>In re Hindenlang</u>, 164 F.3d at 1034 n.5, 1035 n.7 —that there might conceivably be circumstances in which tax returns are filed only after the IRS prepares SFRs and makes an assessment, and yet still serve a "tax purpose" or otherwise reflect an "honest and reasonable attempt to satisfy the requirements of the tax law."  It is perhaps significant, though, that these appellate decisions merely recognize the theoretical possibility of such a showing in a proper case, while holding that no such "honest and reasonable attempt" was made by the debtors in those particular cases. Likewise, this Court simply is unable to identify any evidence in the record that would warrant a finding of an "honest and reasonable attempt" in this case.  The sole evidence offered by Debtor to support this proposition — namely, the IRS's acceptance of his late filings and the agency's use of these submissions to reduce his tax liability — is insufficient as a matter of law to satisfy the fourth prong of the <u>Beard</u> definition of a "return."  Because Debtor filed no such "returns" for the tax years at issue, his tax liabilities for these years are excepted from discharge under 11 U.S.C. § 523(a)(1)(B)(i).

### III. <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Bankruptcy Court's

order granting summary judgment to Debtor Timothy W. Izzo and denying the motion for

summary judgment filed by the Defendant/Appellant United States of America is

REVERSED.  IT IS FURTHER ORDERED that this case is REMANDED to the

Bankruptcy Court for entry of summary judgment in favor of the United States.


                                           s/Gerald E. Rosen
                                           Gerald E. Rosen
                                           United States District Judge

Dated:  March 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 30, 2006, by electronic and/or ordinary mail.

                                           s/LaShawn R. Saulsberry
                                         Case Manager